Good morning, Your Honors. May it please the Court, Paul Barr, Federal Defenders of San Diego, on behalf of Martin Alcantara-Castillo, I'd like to reserve two minutes of my time for rebuttal. At trial, Your Honors, the government committed at least four distinct acts of prosecutorial misconduct which individually and cumulatively prejudiced Mr. Alcantara, and for that reason this Court should reverse the conviction and remand. I'd like to briefly address the improper cross-examination before turning to the three acts of misconduct that occurred during the government's closing argument. That being said, I think it's important throughout this conversation for the Court to consider each of these errors not in isolation, but in unison, in their totality. Because the way in which the errors interact with each other is going to influence this Court's prejudice analysis. Together, they materially and adversely affected the fairness of the trial. First, the prosecutor committed misconduct when he required Mr. Alcantara to comment on the truthfulness of Agent Hunter's testimony. Now a couple of points merit consideration about the cross-examination conducted by the prosecutor in this case. First, there really is no legitimate reason for the government to ask the questions that it asked. To ask Mr. Alcantara whether he was familiar with the testimony that Agent Hunter had just given on the stand or had given the previous day. Second, the questioning, though somewhat different in substance, in general form tracks the disfavored questioning that took place in this Court's decisions in Sanchez, in Guestin, in Combs. And third, that line of questioning established a real theme that ran throughout the government's case and was returned to repeatedly during the government's closing argument. It foreshadowed the government's position and juxtaposed the credibility of Mr. Alcantara versus the credibility of Agent Hunter. And really, with sort of a wink to the jury, highlighted the fact that Mr. Alcantara was essentially calling Agent Hunter a liar. And this was a theme that was going to become very important during the government's closing argument. I'd like to ask a question about that. Yes, Your Honor. Vouching normally requires an assertion that the witness will face professional or legal repercussions if they are untruthful. So why should we find vouching in the absence of such an assertion? Well, Your Honor, there are four different acts of misconduct that I'm alleging here. I think the act of misconduct that most neatly falls within the parameters of vouching is the final one that's mentioned in my briefs. What I would argue is the most egregious example where the prosecutor, during the rebuttal argument, got up and said that essentially the jury should believe Agent Hunter and the Border Patrol agents because these are agents that are sworn to uphold the law. There was an objection to that. There was an objection to that. The objection was sustained, Your Honors. The issue, though, was that no curative was given. A curative was requested. The court declined to give one. And this court has made clear in Weatherspoon that failure to give a curative is not in itself cured by subsequent general jury instructions. And, in fact, in this case, the issue is even more stark because there were no subsequent general jury instructions. The district judge in this case had pre-instructed so the jury did not receive any additional guidance other than the mere fact that the court sustained the objection. The jury was left with no real information as to how it should interpret and proceed after the government's misconduct in that instance. But didn't the court instruct the jury to disregard the comment? That's curative. It did, Your Honor. But, again, my position is that that is not sufficiently curative. It doesn't explain to the jury the essence of the problem. It says to disregard the comment, but this is sort of legalese. This is jargon that lawyers are familiar with, but the juries aren't. And my position is that a more thorough, far-reaching curative was necessary, at the very minimum, as I requested, of the district court. It's not a traditional curative instruction, is it? I mean, it's not usually a curative instruction. Ladies and gentlemen, you must disregard this testimony because it should not be admitted into trial and go further than just three words. This goes back to this whole Maloney issue, as far as I'm concerned. I'm sorry, Your Honor, I didn't hear the last part. The whole Maloney issue that was debated at the en banc hearing we had recently. I understand, Your Honor. Yes, I mean, that's the issue, is that the curative was not sufficient. It was very cursory, and, again, it didn't flag for the jury what the real problem was here. It didn't remind the jury that the jury is the finder of fact, the jury weighs credibility, the jury is to treat the testimony of law enforcement officers exactly as it would any other witness, that it should apply the jury instruction, which the government went through in exacting detail when it applied it to Mr. Alcantara's testimony and also to Dr. Smith's testimony, but simply skipped over when talking about its own witness's testimony. And that's important because in the closing argument, there were three acts of misconduct that all sort of flowed together in a very important manner that was ultimately highly prejudicial. First, government set the stage by saying this is a case where, in order to acquit Mr. Alcantara to believe his testimony, you must conclude that Agent Hunter is not telling the truth. So that flagged the issue for the jury. Then the government puts the... That wasn't inappropriate, was it? It's my contention that it is, Your Honor. But, again, this court in Sanchez says that the prosecutor should not take the position that, in order to believe the defendant's testimony, it must find the government's witnesses to be lying. But that's not what he said. He said in order to convict him. He said one of these people can't be telling the truth, Mr. Alcantara or Agent Hunter. One of them can't be telling the truth. That's a classic credibility statement. Well, first of all, it's, strictly speaking, not true. And this is sort of a scenario that this court addressed in Ruiz. And the court expressed some discomfort with this notion because it's not actually true. In fact, Mr. Alcantara testified that he did not remember making the statement. There certainly was room for ambiguity as to whether Agent Hunter was remembering the statement correctly, whether he heard the statement correctly, whether there was some language barrier. Agent Hunter admitted that he was not fluent in Spanish. But this second error where the government merely makes a naked assertion that Agent Hunter is credible. And it sort of really stands out if you look at the transcript. It's a little paragraph unto itself. It's basically a topic sentence. Even the court reporter recognized this is a new topic. We're talking about Agent Hunter's credibility. But there's nothing following that. There's no sense. How can we conclude that it affected the proceedings? Didn't the jury already know that Agent Hunter was a law enforcement officer? Certainly, Your Honor. But, again, that's not the appropriate type of an argument that the prosecutor can make. The prosecutor, in effect, was saying you must give his evidence more, his testimony greater weight merely by virtue of the fact that he's a law enforcement officer. And to address your earlier question, Your Honor, there's this implicit assurance. He is sworn to uphold the law, sworn just as though there is going to be some additional consequence if he is not telling the truth. Some consequence over and above what consequences any other witness might face. So I think there's a very, very real danger in this case that the jury is going to, whether consciously or not, import this idea that Agent Hunter has to be telling the truth because if he's not, he's going to risk not only whatever consequences the court might dole out but professional consequences. So that's a very real concern in this case. Again, once the government presses its thumb a little bit on the scale by saying Agent Hunter is credible, it then tilts the playing field completely by this third act of misconduct where it says, look, not only is Agent Hunter credible, he's really credible because he's a law enforcement agent and, conversely, Mr. Alcantara, not only is he a defendant, not only is he a liar, he's a methamphetamine addict. So there's this real, real serious and unfair tilting of the playing field that's not an appropriate way for a prosecutor to make an argument in closing. And that is particularly... We only have a little over a minute. I'll reserve the rest for rebuttal. Thank you, Your Honors. Good morning. Kyle Hoffman from the United States. Mr. Hoffman, there were two trial lawyers for the government in this case. Yes. One was Mr. Finn and the other was Mr. Casper. That's correct. And you're neither of them? Correct. And this whole issue is about prosecutorial misconduct? I understand, Your Honor. Mr. Finn is actually arguing another case here today. Mr. Casper has just recently come back after having some family issues. All right. Well, at least Maloney, the trial lawyer, showed up in the courtroom. I understand, Your Honor. I try to do the best I can in the absence of that. Okay, well, let me understand something. So Mr. Finn, he handled the whole trial? Just from reading the transcript, it appeared like he handled the bulk of the case. Did he make the opening rebuttal or the opening closing argument? Yes. Is there some reason that you know of that Mr. Casper, who was obviously the supervising attorney, had to leap up and go into the rebuttal, starting off with improper vouching, as the government admitted? I don't know the reason for that, Your Honor.  I wholly agree that that was not proper. And according to Mr. Casper, credibility was the key issue. Or at least that's what he told the jury. Mr. Finn and Mr. Casper, and according to— The whole trial, credibility was the key issue. Correct. So for some reason, at the beginning of the rebuttal of the closing argument, the senior prosecutor felt it incumbent upon himself to leap up and vouch for the credibility of the police officer. I admit that it was improper, Your Honor. I don't know what else I can say. I think he got overly enthusiastic, for sure. Well, let me give you a suggestion about why Mr. Hunt, Agent Hunter's credibility needed to be vouched for improperly. Isn't it the case that this thing turned on Hunter's discussion of Alcantara's confession, which he did not—he made no notes of at the time of the alleged confession, and he did not discuss it with anybody for seven months until he suddenly recalled that the defendant had confessed? Isn't that kind of suspicious? Obviously, that was the defense argument, and the facts that Your Honor has laid out are correct. They're true, right? Yes. So suddenly, seven months after the fact, and there's no contemporaneous record at all, no discussion with anybody else at all, your agent remembers that Alcantara had confessed and testifies to that at trial. Right, and he gave a reason why he remembered it. It's because Mr. Alcantara had said, I'm going back to Mexico, and that stuck out in his mind. It didn't stick out enough in his mind to write it down at the time or document it or tell anybody? I mean, that's kind of not typical. In the last argument, we relied on the typical government procedure. This is not the typical government procedure with confessions, is it? I can't answer that question, actually, Your Honor. You really can't? No. You don't work with agents? I do occasionally, but I don't know whether they ---- Oh, you don't have to answer that question. I know it's not the typical procedure. Here's what I'd suggest just on the broader point, Your Honor, about the statement that it's a credibility battle. I disagree with that, and the reason I disagree with that is that it's a little bit like calling a football game between UCLA and Pomona a contest. It's not really a contest. Even if you take Agent Hunter's statements away and you just look at the circumstances that really aren't in dispute. I don't think they're all that compelling, especially when we get this letter today saying that the facts that you relied on throughout the ---- I don't know. Did you work on the briefs? I did. Okay. And I ---- It wasn't a three-day trip at all. No. And you got the whole highway confused. Right, which is perfectly understandable since the only highway that was referred to was Highway 94, which is in the exhibit. I don't know. I'm sorry. I read this, and after just going through the whole Maloney episode, I just thought is this ---- I have to ask the question, was this another incident of the U.S. Attorney's Office for the Southern District overreaching in a case where they could have won it without getting up and engaging in improper, and I'm not calling it prosecutorial misconduct. I'm saying improper conduct. All I'm trying to suggest, Your Honor, what I've tried to do in the brief and what I'd hoped to do here was to break out the instances, discuss whether they were objected to or not, because I think that makes a difference, discuss whether they were improper in the first place or not. We've discussed one, which I concede is improper. I don't agree that the statement, Agent Hunter's testimony remains consistent, remains believable, and remains logical was improper, and besides it wasn't objected to. And then we get to the others. I mean, I can discuss them seriatim. Isn't one enough, though? That's true. If you find ---- If you find one meets plain error or one is harmless, sure, that's enough to reverse. But what I'm suggesting is that even apart from Agent Hunter's statements, the story was just not believable. Even on the one that the government has conceded, what's your response to opposing counsel's argument that the curative instruction or the curative efforts by the district court were inadequate? That's usually a question of abuse of discretion, whether to give curative instruction. The objection was immediate. The response, motion to strike, granted. The jury will disregard. And then as the district court talked about when he was debating whether to give a curative instruction, he said, no, they've been voir dire, they've been pre-instructed. You're to disregard when I say it's stricken and disregarded. And they were instructed afterwards. So he said it's not necessary. All those things together, the curative was not necessary on that, the fourth item. And I think that's correct. So, you know, even the judge, I mean, he denied the curative instruction, but he says, I'm not comfortable, frankly, in the future having separate counsel argue the closing when counsel opens. And I might rule, unless somebody has authority to the contrary, one lawyer, because I think you overdid the true meaning of close by having a second bite of the apple. And I don't think I'm going to tolerate that in a future case. If I had known that was coming, I would have stopped it. Given all those statements by the judge, I mean, he clearly thought something improper had been going on here. Why wouldn't he give the curative instruction? What would be the harm in that? Well, perhaps a different district court judge would have. But the question is, is that an abuse of discretion not to give one in these circumstances? And I would suggest that it wasn't. Now, I don't know whether I can persuade the court that the other claims of error either weren't error or weren't plain error or not. What I'd like to do is say that given the story that Mr. Alcantara told, which was a very extensive story and required a lot of belief, and then just given the pure circumstances of where he was found, the errors, whether they were plain error, harmless error, they didn't affect the verdict. I mean, I brought these exhibits to try to show the court what the terrain is like. What the evidence was, was there's a border fence, there are agents on the border, there are agents behind the border. It's mountainous, it's rugged, it's terrain that looks like this. And Mr. Alcantara's story was I wandered over one of the most heavily guarded places in the country. I wandered over there in the middle of the night and found myself in the United States. I'm suggesting even without Mr. Agent Hunter's story, which Your Honor seems not to credit very much, that story doesn't make sense. So you know what? Why don't you just rely on that? That's what I'm arguing now. I know, but at trial. So why do we go through all this other stuff? I think some of the claims of error were not really error. I agree with you on some of them, but again. And I'm not going to stand in front of Your Honor and say that particularly the last one was proper. It wasn't. As I said, I think there was overenthusiasm. But I'm just trying to. I understand. Is it, and this is the third day of these cases. Is it clear in the record that Alcantara was on meth when he was found or he was taking meth? Well, he told, there was an interview, and he told the interviewing agent, I'm on meth. And the border patrol policy, as soon as they say that, they go to the hospital. So to be completely candid with the court, I don't know if there was testing done at the hospital or what the results were. I don't think that appears in the trial transcripts. But I do know that the part that I just related to, Your Honor, does appear in the trial transcripts. And one thing I could say is that even if he were on meth, that doesn't mean that his story about I completely blacked out and I ended up a mile into the, there's no dispute it was a mile into the United States in this kind of terrain. That's what I don't know from personal experience. I don't know how meth affects someone. Right, but I'm relying more on what this kind of moonscape out in East County of San Diego looks like and the fact that there are agents and censors all over the place. That's what I'm relying on. So if I can answer any of the court's questions, I'd be happy to try. I don't know if the court has any questions. I don't have any more. Thank you. All right. Thank you very much. I don't know that you had time left. Did you have time? We've got 1.20 here according to the clock here. Your Honor, just briefly, with respect to the believability of Mr. Alcantara's story, first of all, the defense did bring a defense expert, Dr. Smith, who testified at length to the jury explaining to them the effects of methamphetamine, that it causes hallucinations, that it causes confusion, that it causes confusion as to place and time. So these were all things that were relevant and directly I think buttressed Mr. Alcantara's account. And the jury had the opportunity to hear all of that and gauge that whether or not his story was implausible in light of the expert testimony. They did, Your Honor. But again, it's all hinging on this single credibility evaluation between Mr. Alcantara on the one hand and Agent Hunter on the other. And again, the government is just pushing its thumb down on that scale in a way that's improper because if Mr. Alcantara's testimony fails, Dr. Smith's testimony admittedly fails because his testimony is based primarily on what Mr. Alcantara told him and what he testified to at trial. The terrain out there, moonscape I think is probably an appropriate description. We're not talking about the cliffs of Dover here. Yes, it's rugged, it's dry, it's arid, but this is not impassable. This is not something that would require climbing equipment. And people cross it all the time, as this Court is well aware. And by the government's own lights, a group of nine people somehow made it several miles north before being chased back south. And Mr. Alcantara was the lone lucky man to get away despite his frailties and infirmities. Your Honor, with respect to the various acts of misconduct, admittedly I believe that two of the acts of misconduct were objected to. I believe the cross-examination was contemporaneously objected to. And I think that's reflected in the record. Maybe not instantaneous, but immediately after the troublesome line of questioning. But I think lastly, all of the acts of misconduct need to be considered in their totality because each of them interacts with the other in sort of presenting this government theory about credibility. I'm not sure if I have, I guess I have a little bit more time. Actually. Am I over? You're over. Okay. In that case, if the Court has nothing more, I submit. Thank you, Your Honor. All right. Thank you very much, Counsel. Counsel, I liked your analogy to UCLA playing football against Pomona. At least I understood it. Thank you. Okay.
judges: Nelson, Wardlaw, Rawlinson